UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:05-CV-249-V

| | |
|---|---|
| NICHOLS FAMILY INVESTMENTS, LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) MEMORANDUM and ORDER ) |
| KEVIN HACKENBERG, et al., | ) ) |
| Defendants. | ) ) |

**THIS MATTER** is before the Court on the defendant Dale Hill's ("Hill") *Pro Se* Motion to Dismiss (doc. #6), filed on November 9, 2005. The plaintiff filed its Response in Opposition (doc. #26) on December 20, 2005. Hill did not submit a reply.

The defendant's Motion to Dismiss is ripe for disposition. For the reasons discussed below, this Court will **DENY** the defendant's Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL HISTORY

This suit arises out of a business transaction between the plaintiff and the defendants. The plaintiff, through a financial services firm ("Hayden Harper"), agreed to give the defendants a $2.5 million "bridge loan"[1] to secure financing for the acquisition of oil fields. A total of $2,477,110 was paid to the defendants after the execution of two secured promissory notes. The plaintiff contends that the defendants never intended to arrange the financing of oil fields with the $2.5 million loan.

---

[1] A "bridge loan" is a term for a short-term loan in the financial industry. In this case, it was meant to take advantage of a short-term financing opportunity in order to secure long-term financing.

Despite not being used for its purported original purpose, the funds were not returned to the plaintiff. The complaint, filed on September 8, 2005, alleges fraud, conversion, civil conspiracy, violations of the North Carolina Loan Broker Act, unfair trade practices, and federal civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against nine defendants.

Defendant Hill's involvement in this transaction is allegedly as follows: (1) through his company Signature Financial, Hill allegedly received 70% of the transferred funds; (2) Hill spoke by telephone and in person to David Ellington ("Ellington"), the plaintiff's agent at Hayden Harper, and personally, and in concert with others, persuaded Ellington to advise the plaintiff to advance the $2.5 million; (3) Hill asked Ellington to submit a loan application to Hill; (4) Hill attempted to mislead Ellington concerning the location of the $2.5 million. (doc. #26 p.2). Hill was also, allegedly, aware that the plaintiff and Ellington were residents of North Carolina, and that the funds in question were being transferred from a North Carolina account (doc. #26 p.2).

## II. ANALYSIS

In his Motion to Dismiss, Hill essentially makes four arguments: (1) that he was not properly served under the Federal Rules of Civil Procedure, (2) that this Court has no personal jurisdiction over him, (3) that this Court does not have subject matter jurisdiction in this case, and (4) that venue is not proper in the Western District of North Carolina ("W.D.N.C.").

**A: Service of Process**

The defendant was properly served under Fed. R. Civ. P. 4(e)(1) and 4(e)(2). The defendant states in his Motion to Dismiss that he was served personally at his office in Houston, Texas. In addition to Rule 4(e)(2) which specifically authorizes personal delivery in any judicial district in the

United States, Rule 4(e)(1) is applicable, as personal delivery is also valid under the law of the State of North Carolina. N.C. Rules of Civ. Proc. G.S. § 1A-1, Rule 4(j)(1)(a).

**B: Subject Matter Jurisdiction**

Further, this Court has subject matter jurisdiction in this case. Under 28 U.S.C. §1331, the Court has federal question jurisdiction over the RICO claim. Concerning the other claims asserted by the plaintiff, the Court has supplemental jurisdiction under 28 U.S.C. § 1367. Since none of the defendants is a citizen of the same state as the plaintiff, the Court also has diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

**C: Personal Jurisdiction**

This Court has personal jurisdiction over the defendant Hill. Federal Rule of Civil Procedure 4(k)(1)(D) provides, in pertinent part, that "[s]ervice of a summons . . . is effective to establish jurisdiction over the person of a defendant . . . when authorized by a statute of the United States." Fed. R. Civ. P. 4(k)(1)(D). The Racketeer Influenced and Corrupt Organizations Act is such a statute of the United States, and it authorizes service of process "on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(d). In the instant case, the defendant was served where he was found, namely in his office in Houston, Texas. This was sufficient to confer personal jurisdiction over the defendant because "'[w]here,' as here, 'Congress has authorized nationwide service of process . . . so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant.'" ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 626 (4th Cir. 1997), quoting Hogue v. Milodon Eng'g, Inc., 736 F.2d 989, 991 (4th Cir. 1984).

Thus, the question becomes whether personal jurisdiction over the defendant Hill is compatible with due process. The due process requirement under Federal Rule of Civil Procedure 4(k)(1)(D) is not analyzed under the Fourteenth Amendment of the U.S. Constitution, but rather under the Due Process Clause of the Fifth Amendment "which constrains the exercise of the federal government's sovereign powers." Id. Thus, the defendant's *national* contacts need to be considered, not his contacts with the State of North Carolina. As the plaintiff points out, the defendant Hill does not deny his contacts with the United States. Rather, he admits doing business in the State of Texas as "Signature Financial Group." To defeat personal jurisdiction in this case, it must be shown that there is "such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy of allowing the assertion of in personam jurisdiction" in North Carolina. See id., at 627. Although, admittedly, there is some inconvenience to Hill in defending this case in North Carolina, this inconvenience does not rise to the level of "extreme inconvenience or unfairness." Also, the aspect of inconvenience can be raised in the context of forum non conveniens as a challenge to venue.

In ESAB Group, the court also recognized pendent *personal* jurisdiction of a district court "which has obtained personal jurisdiction over a defendant by reason of a federal claim to adjudicate state claims properly within the court's subject matter jurisdiction . . .." Id., at 628. The court in ESAB Group also held that "[w]hen a federal statute authorizes a federal district court to exercise personal jurisdiction over a defendant beyond the borders of the district and the defendant is effectively brought before the court, we can find little reason not to authorize the court to adjudicate a state claim properly within the court's subject matter jurisdiction so long as the facts of the federal and state claims arise from a common nucleus of operative fact." Id. In this case, all claims are based

4

on the same set of facts, as alleged by the plaintiffs in their Complaint. Hence, the federal and state claims arise from a common nucleus of operative fact. In addition, this Court agrees with the judicial economy and convenience rationale presented by the court in ESAB Group which states that it imposes merely a minimal burden upon the defendant to defend the factually-related state claims. See, id. Therefore, in accordance with the Fourth Circuit's holding in ESAB Group, this Court has personal jurisdiction over the defendant Hill

regarding both the federal and the state law claims alleged against him.

**D: Venue**

In civil RICO cases, venue is governed by 18 U.S.C. § 1965(a) and (b). However, venue may also properly be established by the general venue statute 28 U.S.C. §1391. ESAB Group, 126 F.3d at 627 (holding that the district court would have to decide "whether venue is proper, either under 18 U.S.C. 1956(a) or (b), or under the general venue statutes"); Medoil Corp. v. Clark, 753 F.Supp 592, 598 (W.D.N.C. 1990), citing State of North Carolina v. Alexander & Alexander Servs., Inc., 680 F.Supp 748, 752 (E.D.N.C. 1988).

In the case at hand, Section 1965(a) is not applicable, as the action was not instituted in the district where Hill resides, has an agent, or transacts his affairs.[2] In regards to Section 1965(b), it has been held that "at least one defendant must be before the court pursuant to the venue provisions of 28 U.S.C. § 1391(b) or 18 U.S.C. § 1965(a)." Medoil, 753 F.Supp at 598. The Court has insufficient

---

[2] Hill does not "transact his affairs" in North Carolina, as "transacts" has been held to refer only to the time when the suit is instituted, thus giving the present tense literal meaning. Medoil Corp. v. Clark, 753 F.Supp 592, 598 (W.D.N.C. 1990). Even though Hill may have transacted his affairs in North Carolina at one point, he has not done so since the filing of the Complaint.

5

knowledge of the facts pertaining to the other defendants, and declines to analyze the other defendants' personal jurisdiction under 28 U.S.C. § 1391(b) or 18 U.S.C. § 1965(a). Thus, as personal jurisdiction has not been determined as to another defendant, Section 1965(b) is inapplicable to the case at hand.

When federal jurisdiction is not founded solely on diversity of citizenship, 28 U.S.C. §1391(b) supplies an additional basis for establishing proper venue. In pertinent part, section 1391(b) provides that an action can be brought only in "a judicial district in which a substantial part of the events or omission giving rise to the claim occurred . . .." 28 U.S.C. 1391(b). The Fourth Circuit has specified that a "weight of contacts' test be utilized in determining where a claim arose. Broadcasting Co. v. Flair Broadcasting, 892 F.2d 372, 377 (4th Cir. 1989). Thus, venue is proper in the district with the most significant ties to the claim. Id., at 376. In the instant case, most of the events giving rise to this action took place in Texas and in Charlotte, North Carolina. While communications (by facsimile, telephone, or email) often originated outside of North Carolina, they were nonetheless directed at Hayden Harper, or the plaintiff's agent, Ellington, in North Carolina. Even though none of the defendants reside in North Carolina, they were allegedly aware that they were doing business with residents of North Carolina. Hayden Harper was allegedly solicited by the defendant Nazzaro and by Doug McMillan in Charlotte, North Carolina. The plaintiffs and Ellington both reside in North Carolina, and the plaintiffs' company, Nichols Family Investments, LLC ("NFI"), is also located in Charlotte, North Carolina. Furthermore., the funds in question were transferred from Charlotte. Hence, it can be determined that Charlotte, North Carolina, has the most significant ties to the claims. The Western District of North Carolina is, therefore, the proper venue under 28 U.S.C. § 1391(b).

In regard to the defendant's argument of forum non conveniens, the defendant has not supplied this Court with sufficient evidence that the Southern District of Texas is a more convenient forum in terms of facilitated access to witnesses or evidence, the relative advantages and obstacles to a fair trial, or other practical problems that make a trial easy, expeditious, and inexpensive. See, Uniprop Mfg. Hous. Cmtys. Income Fund II v. Home Owners Funding Corp. of Am., 753 F.Supp. 1315, 1322 (W.D.N.C. 1990). An argument of forum non conveniens needs more than the mere assertion that none of the defendants reside in the plaintiff's district of choice, and that the majority of defendants reside in the Southern District of Texas. Such an argument would merely shift the inconvenience of a trial in a distant district to the plaintiff.

Also, the Fourth Circuit has held that "[w]ith regard to the question of change of venue, a district court is required to weigh the factors involved and 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984), quoting Gulf Oil v. Gilbert, 330 U.S. 501, 508 (1946); see also, Commercial Equip. Co., Inc. v. Barclay Furniture Co., 738 F.Supp. 974, 976 (W.D.N.C. 1990). In the case at hand it is not evidenced that the balance is strongly in favor of the defendant. Thus, this Court gives greater consideration to the plaintiffs' initial choice of forum.

However, this Court might reconsider if presented with a more substantiated claim of forum non conveniens. For these reasons, this Court determines that the proper venue for this action is the Western District of North Carolina.

## III. CONCLUSION

**IT IS THEREFORE ORDERED** that the defendant's Motion to Dismiss is hereby **DENIED**, consistent with the terms of this Memorandum and Order.

Signed: June 1, 2006

Richard L. Voorhees
Chief United States District Judge