UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:05-CV-249-V

| | |
|---|---|
| NICHOLS FAMILY INVESTMENTS, LLC, ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | O R D E R |
| KEVIN HACKENBERG, CALVIN BIRD, ) DALE HILL, d/b/a SIGNATURE FINANCIAL ) GROUP, HAROLD CRUMB[sic], CARLOS ) GONZALES, STUART NAZARRO, ) HACKENBERG ENTERPRISES, INC., ) HACKENBERG ENTERPRISES, LLC, ) ALDEBARAN PARTNERS, et al., ) ) Defendants. ) ) | |

**THIS MATTER** is before the Court on Defendant Harold Crum's *Pro Se* Motion For Relief From Judgment, as well as all related memoranda of law and exhibits. (Documents #52, #59, #68, #74, #77) Mr. Crum may be referred to herein as "Crum" or "Defendant."

## I. Nature of Action

This suit arises out of a business transaction between the Plaintiff and the Defendants. The Plaintiff, through a financial services firm ("Hayden Harper"), agreed to give the Defendants a $2.5 million "bridge loan"[1] to secure financing for the acquisition of oil fields. (Compl. ¶¶ 17, 18) A total of $2,477,110.00 was paid to the Defendants after the execution of two secured promissory notes. (Compl. ¶¶ 23, 24, 34) The Plaintiff contends that the Defendants never intended to arrange the

---

[1]A "bridge loan" is a term for a short-term loan in the financial industry. In this case, it was meant to take advantage of a short-term financing opportunity in order to secure long-term financing.

1

financing of oil fields with the $2.5 million loan. (Compl. ¶26) Despite not being used for its purported original purpose, only $27,000 was returned to the Plaintiff. (Compl. ¶46)

Plaintiff's Complaint, filed on September 8, 2005, alleges fraud, conversion, civil conspiracy, violations of the North Carolina Loan Broker Act, unfair trade practices, and federal civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against nine (9) individual and corporate defendants.

The Clerk issued an Order of Entry of Default on February 27, 2006, indicating that summons and a copy of the Complaint were served upon Defendant on October 6, 2005. (Document #35) On June 21, 2006, the undersigned presided over a hearing scheduled to address the matter of appropriate damages in light of default. No one appeared on behalf of Defendant Crum.

On July 18, 2006, Default Judgment was entered against Harold Crum and several alleged co-conspirator defendants.[2] (Document #49) The Default Judgment called for joint and several liability in the amount of $7,350,330.[3] Default Judgment was expressly premised upon the following conduct:

> (a) for money or an extension of credit obtained by false pretenses, false representations, and actual fraud not related to the defaulting defendants' financial condition,
> (b) for fraud while acting in a fiduciary capacity, and
> (c) for willful and malicious injury by the defaulting defendants to the plaintiff.

---

[2] Default Judgment was entered against Defendant Crum as well as Defendants Kevin Hackenberg, Calvin Bird, Carlos Gonzales, Hackenberg Enterprises, LLC, and Hackenberg Enterprises, Inc.

[3] Default Judgment was based upon Defendants' fraud, conversion, and conspiracy and violations of the North Carolina Loan Broker Act, the North Carolina Unfair and Deceptive Trade Practices Act, and the Racketeer Influenced and Corrupt Organizations Act. The award was trebled pursuant to N.C. Gen. Stat. §§66-106 et seq., 66-111(d), 75- 1.1, 75-16, and 18 U.S.C. §§ 1341, 1343, 1961(1)(B),(4) and (5), 1962 (a)-(c), and 1964(c).

(Default Judgment at 3.)

Significantly, Defendant Crum did not attempt to set aside the Order of Default Judgment until Plaintiff executed on the judgment.

## II. Discussion

In his motion, Crum now seeks relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Rule 60(b) provides the Court with discretion to relieve a party from a final judgment based upon "any [] reason that justifies relief." FED. R. CIV. P. 60(b)(6). Defendant Crum contends that default judgment should not have been entered against him for various reasons, including lack of personal jurisdiction (no consent), lack of service of process, and the absence of privity of contract between Plantiff and Crum. The Court will address each in turn.

### a. Personal Jurisdiction / Service of Process

The Court is satisfied that service of process was proper and that the exercise of personal jurisdiction over Defendant Crum comports with the applicable law.

Service of process was consistent with the applicable procedural rules. Title 18, United States Code, Section 1956(d) authorizes service of process "on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. §1956(d). Because Defendant Crum was personally served where he was "found," in Friendswood, Texas, service of process was proper.

In his motion, Crum contends that he was living at an entirely different address on the date that Plaintiff claims to have effected personal service. However, it appears from the Plaintiff's response that Crum's claim is either inadvertently incorrect or just plain false. (Pl.'s Exhs. D, E, F / Crum Dep.: 70-71) Although Crum seeks to discredit the statement of Connie Young, the process

server hired by Plaintiff, via his unsworn statement of denial, the Court finds that Ms. Young's Affidavit and deposition testimony establish that personal service was accomplished at Crum's residence on October 6, 2005.[4] (Document #9; Exh. C / Young Dep.: 5) The Court declines to revisit its earlier ruling based solely upon the unsworn and self-serving statements by Defendant Crum.[5]

Service of process triggers personal jurisdiction over Defendant Crum.[6] Pursuant to Rule 4(k)(1)(D), "[s]ervice of a summons . . . is effective to establish jurisdiction over the person of a defendant . . . when authorized by a statute of the United States." FED.R. CIV. P. 4(k)(1)(D). Because the Racketeer Influenced and Corrupt Organizations Act ("RICO") statute falls within this category, under the worldwide process provision of the RICO statute, namely, 18 U.S.C. §1956(d), service of process is sufficient to constitute *in personam* jurisdiction over the individual defendant. *See* ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 626-27 (4th Cir.1984) (*citing* Hogue v. Milodon Eng'g, Inc., 736 F.2d 989, 991 (4th Cir.1984)). Accordingly, as long as the exercise of personal jurisdiction is compatible with due process, personal jurisdiction is proper.

---

[4] In his own deposition testimony, Harold Crum denied service, but admitted reviewing the documents "served." When asked what he had done to prepare for his deposition, Crum responded: "I tried to find records, and review records, read through the documents you've served." (Crum Dep. 11:23-24)

[5] The record reveals this is not the first time Crum has been accused of attempting to evade service. (Pl.'s Exh. H / Exh. 1 to Crum Dep. / Quinn Aff. ¶¶2, 6 plus photographs)

[6] This Court has already opined on this very issue with respect to Defendant Hill. (*See* June 2006 M & O at 3.)

The Court likewise finds that the principles of due process are satisfied.[7] In light of Rule 4(k)(1)(D), the Court evaluates due process under the Fifth Amendment of the U.S. Constitution as opposed to the Fourteenth Amendment. *See* ESAB Group, 126 F.3d at 626. Therefore, Crum's national contacts — his contacts with the United States – are the starting point rather than a review of Crum's contacts with the State of North Carolina. Since Crum admits to residing in Texas during the relevant time period, the national contacts test is easily met.

While defending a lawsuit in North Carolina may be (or might have been) inconvenient to Defendant Crum, the Court is not persuaded that any inconvenience to Crum is extreme or unfair. *See* ESAB Group, 126 F.3d at 627. In an effort to demonstrate hardship, Crum submits Declarations from two of his treating physicians, namely, Drs. Markus A. Giacomuzzi, DPM, and Scott Hung, M.D. (Documents #77) As Plaintiff points out, had Crum defended against the action initially, he could have sought a transfer to a more convenient forum. That relief is not available to Crum now. *See* Clover Leaf Freight Lines, Inc. v. Pacific Coast Wholesalers Assoc., 166 F.2d 626, 632 (7th Cir.1948) (challenge to venue not proper basis for setting aside judgment under Rule 60); 10A Wright & Miller: FEDERAL PRAC. & PROC. § 2695, 133-34 (1998 ed.).

Finally, the Court has pendent personal jurisdiction over the state law claims as all of the causes of action alleged by Plaintiff arise from a common nucleus of operative facts. *See* ESAB Group, 126 F.3d at 628.

**b. Privity of Contract**

Crum also seeks relief from judgment based upon the idea that privity of contract is required

---

[7] The analysis regarding Defendant Crum is similar to the due process analysis with respect to Defendant Hill. (June 2006 M & O at 4-6.)

in order for certain of Plaintiff's causes of action to state a claim against him. More specifically, Crum appears to argue that Plaintiff's claims under the North Carolina Loan Broker Act and the North Carolina Unfair and Deceptive Trade Practices Act are not sustainable against him personally. Crum essentially claims that Plaintiff has improperly "lumped" him in with the other "Hackenberg Defendants" in its Complaint. Crum does <u>not</u> contend that Plaintiff's Complaint fails to state a claim against the Hackenberg Defendants. Based upon the legal theories advanced by Plaintiff, Plaintiff's pleading adequately identifies the alleged conduct of Crum (individually as well as one of the "Hackenberg Defendants") that gives rise to his inclusion in this lawsuit. Privity of contract is not required.

### III. Order

Based upon the record evidence, and for the reasons stated within the Plaintiff's filings, which are hereby incorporated by reference:

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Relief From Judgment is hereby **DENIED**.

Signed: March 31, 2009

Richard L. Voorhees
United States District Judge