# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:05-CV-249-V

| | |
|---|---|
| **NICHOLS FAMILY INVESTMENTS, LLC,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**KEVIN HACKENBERG, CALVIN BIRD,** )<br>**DALE HILL, d/b/a SIGNATURE FINANCIAL** )<br>**GROUP, HAROLD CRUMB[sic], CARLOS** )<br>**GONZALES, STUART NAZARRO,** )<br>**HACKENBERG ENTERPRISES, INC.,** )<br>**HACKENBERG ENTERPRISES, LLC,** )<br>**ALDEBARAN PARTNERS, et al.,** )<br>)<br>**Defendants.** )<br>_____) | **O R D E R** |

**THIS MATTER** is before the Court on Defendant Dale Hill's Motion for Reconsideration of Order on Motion for Default Judgment Against Dale Hill. (Document #72)

Defendant Hill has not taken any action in this litigation since 2006. Defendant Hill had ten (10) days from "notice of the Court's action" [denial of Defendant Hill's Rule 12(b) motion] to submit its responsive pleading.[1] Fed. R. Civ.P. 12(a)(4)(A). Presuming "notice of the Court's action" pursuant to Rule 12(a)(4)(A), Defendant's Answer was due on or around June 14, 2006. However, when the Court first considered Plaintiff's Motion for Default Judgment, the record did not make clear that Hill received notice of the Court's decision denying his motion to dismiss or that

---

[1] Rule 12(a)(4)(A) reads as follows:

    Unless the Court sets a different time, serving a motion under this rule alters these periods as follows:

    (A) if the court denies the motion . . . <u>the responsive pleading shall be served within 10 days after notice of the court's action;</u>

Plaintiff had taken all reasonable steps to ensure service. Likewise, the Court noted the absence of controlling legal authority. The undersigned reasoned that the primary legal authority cited by Plaintiff in support of default judgment could be distinguished. *See* Sec. and Exch. Comm'n v. Lawbaugh, 359 F.Supp.2d 418, 421-22 (D.Md.2005) (default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party with notice of impending default). The Court, in its discretion, declined to enter default in favor of Plaintiff and against Defendant Hill given the concern that the Court (or the Plaintiff) had not exhausted every avenue reasonably available for accomplishing service of the June 2006 Memorandum and Order. (Document #71)

Since that time, Plaintiff has supplied sufficient information to warrant reconsideration by the Court. More specifically, Plaintiff proffers excerpts from the deposition of Defendant Harold Crum (alleged co-conspirator) and the Declaration of Attorney Nader Baydoun (results of search for Defendant Hill by private investigator). Having reviewed the additional information presented by Plaintiff, it appears that Default Judgment is, in fact, proper.

As an initial matter, Plaintiff correctly asserts that, as a general rule, the validity of service of process is not affected by whether notice was actually received by a party. *See* Stamper v. Parsons, 2005 WL 82135, *4 (D.Kan. Jan. 12, 2005) (service by mail under Rule 5(b) is complete upon mailing). In this case, service of multiple documents was attempted by Plaintiff and the Court at Hill's Houston, Texas address – his last known address. In analogous situations, service has been deemed complete upon the mailing of a filing to the party's "last known address." *See* FED. R. CIV. P. 77(d) and 5(b)(2)(C); *See e.g.,* United States v. Laws, 352 F.Supp.2d 707 (E.D.Va. 2004); In re Eagle Bus. Mfg. Inc., 62 F.3d 730, 735 (5th Cir.1995); Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629 (11th Cir.1988).

According to Crum, Hill was living in Houston, Texas, during the summer of 2006 and, therefore, should have received the relevant mailings from the Court. (Crum Dep.: 107-08) Crum

testified further that Hill reported to him that he was living in Central America. (Crum Dep.: 106-07)  The private investigator was also advised by Hill's "last known girlfriend" that Hill had fled to Columbia.  (2/14/07 Letter from K. Pipkin to Baydoun)  Counsel avers that the private investigator agency has "exhausted all avenue sof research with negative results."  (Id.)

Most importantly, Hill was cognizant of the pending civil action and the specific allegations lodged against him.  Hill should be held accountable for failing to notify Plaintiff and the Court of his whereabouts.  As Plaintiff suggests, the only reasonable inference from this new information is that Hill purposefully fled the country with his ill-gotten gains in order to avoid responsibility for his actions.[2] (Pl.'s Mot. at 6)  Plaintiff has expended a significant amount of resources, time, and energy in its attempts to locate Defendant Hill to no avail.  Clearly, the equities weigh in favor of Plaintiff.[3]  For all of these reasons, Plaintiff's Motion for Reconsideration is hereby **GRANTED**.[4]

Signed: March 31, 2009

Richard L. Voorhees
United States District Judge

---

[2] According to Hill's own declaration, he received money from Crum in connection with the alleged fraudulent transactions that gave rise to Plaintiff's lawsuit.  According to Baydoun, Hill explained that he collected $540,000 from Carlos Gonzales; that Hill kept $250,000 as a fee and delivered the balance of $290,000 to Crum; and that Hill understood the money had come from Plaintiff. (Baydoun Decl. ¶3)  If Defendant Hill were not seeking to avoid the jurisdiction of the Court, it seems the Court would have heard from Hill by now.

[3] Unfortunately, the likelihood that Plaintiff will actually recover any sum of money from Defendant Hill is slim.

[4] The Order of Default Judgment will issue separately.